CLERKS OFFICE U.S. DIST. COURT
AT CHARLOTTESVILLE, VA
FILED
November 13, 2024
LAURA A. AUSTIN, CLERK
BY: s/ D. AUDIA
    DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

| | |
|---|---|
| PPI/TimeZero, Inc., | ) |
| Plaintiff, | ) |
| v. | ) Civil Action No. 3:24-cv-00037 |
| Zenith Firearms, Inc., | ) |
| Defendant. | ) |

**MEMORANDUM OPINION**

This matter is before the court on "PPI/TimeZero, Inc.'s Motion to Dismiss First Amended Counterclaims." (Dkt. 16.) For the reasons that follow, the court will grant the motion to dismiss.

**I.     Background**

**A. Factual History**

Facts alleged in Zenith's First Amended Counterclaims are accepted as true for the purpose of resolving the motion. *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011); *Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009). On August 4, 2023, PPI/TimeZero, Inc. ("PPI") and Zenith Firearms, Inc. ("Zenith") entered into a "Mutual Release and Settlement Agreement" (the "Agreement"). (Def.'s First Amend. Counterclaims ¶ 5 (Dkt. 15) [hereinafter "FAC"].) Pursuant to the Agreement, PPI promised to "convey, assign, or otherwise transfer" its rights in certain machinery (the "Machinery") to Zenith within ten days of August 4, 2023. (*Id.* ¶¶ 6, 8.) The Machinery at issue included:

1

> (1) [a]ll racks for raw materials (steel) handling; (2) 3 x Horizontal CNC lathes (1 with additional vertical head); (3) 1 x Haas 5 axis, CNC workstation included; (4) Lab equipment component for "Hardness Testing"; (5) 2 X Peening machines used to peen over Mag Release Paddle rivet Rock Tumbler (currently located in lathe area); (6) Five tools currently with vendor to be included - specifically, (a) 2 sets of Flat stamping dies; (b) Forearm; (c) Grip; and (d) Cocking Lever tools/molds."

(*Id.* ¶ 7 (quoting Schedule 1.3(a) of the Agreement).)

The parties agreed that while PPI was to convey, assign, or otherwise transfer its rights to the Machinery, Zenith would be required to incur the cost of transportation. (*Id.* ¶ 8.) Further, Zenith agreed that it was "taking the Machinery 'as is, where is' and shall be responsible for bearing all costs related to the shipping, handling, and transportation." (*Id.* (quoting Section 1.3(a) of the Agreement).) For its part, the Agreement states that "PPI shall not be liable, directly or indirectly, for any damage or defect to the Machinery that may be made as part of any shipping or transportation of the Machinery to Zenith." (*Id.* (quoting Section 1.3(a) of the Agreement).)

The parties also agreed that PPI would convey, assign, or otherwise transfer its rights in certain intellectual property to Zenith. (*Id.* ¶ 9.) Additionally, PPI was required to use "commercially reasonable efforts" to notify any third party in possession of the intellectual property that Zenith now possessed the rights, and that no goods produced in connection with the intellectual property could be sold without Zenith's consent. (*Id.* ¶ 10.)

The Agreement provided that "time is of the essence" and that "PPI was strictly bound to its obligations to convey its rights" to both the machinery and intellectual property by August 15, 2023, ten days after signing the Agreement. (*Id.* ¶¶ 11–12.) However, PPI failed to convey, assign, or otherwise transfer its rights to all of the Machinery by August 15, 2023.

(*Id.* ¶ 13.) Specifically, PPI failed to convey, assign, or otherwise transfer the last group of Machinery: "Five tools currently with vendor to be included . . . (a) 2 sets of Flat stamping dies; (b) Forearm; (c) Grip; and (d) Cocking Lever tools/molds" (the "Tools and Die Molds"). (*Id.* ¶¶ 14, 16.) For all the other Machinery, however, PPI transferred its rights by either delivering select items to Zenith or by allowing Zenith to pick up select items at PPI's facilities. (*Id.* ¶ 15.)

PPI has not yet prepared any contracts, purchase orders, bills of sale or lading, or other documents to facilitate the transfer of PPI's rights in the Tools and Die Molds to Zenith, as would be customary in their business dealings. (*Id.* ¶ 17.) PPI also failed to transport the Tools and Die Molds to Zenith by August 15, 2023. (*Id.* ¶¶ 18–20.) To the best of Zenith's knowledge, the Tools and Die Molds still remain in the possession of a third-party vendor. (*Id.* ¶ 23.)

In addition to not transferring the Tools and Die Molds, PPI has never taken any action to effect the conveyance, assignment, or transfer of any of the intellectual property promised by the Agreement. (*Id.* ¶ 24.) Nor has PPI taken any action to advise third parties of Zenith's ownership of the intellectual property or warn others about using it without Zenith's express consent, as required by the Agreement. (*Id.* ¶ 25.)

Despite this, Zenith still made an initial payment of $300,000.00 as well as a subsequent payment of $200,000.00, pursuant to the Agreement. (*Id.* ¶ 27.) After PPI's failure to convey rights in the Machinery and intellectual property, as well as transport the Tools and Die Molds, Zenith ceased making payments due under the Agreement beginning in October 2023. (*Id.* ¶ 29.)

**B. Procedural History**

On May 20, 2024, PPI filed a complaint against Zenith in the U.S. District Court for the Western District of Virginia. (*See* Compl. (Dkt. 1).) PPI alleged four causes of action against Zenith, including breach of contract, judgment/foreclosure, detinue, and fraudulent inducement. (*Id.* ¶¶ 36–66.)

On June 26, 2024, Zenith filed its answer and counterclaims against PPI. (Dkt. 5.) In response, PPI filed a motion to dismiss for failure to state a claim on July 8, 2024. (*See* Dkt. 10, 11.) Pursuant to Federal Rule of Civil Procedure 15, Zenith amended its counterclaims as a matter of course on July 22, 2024, within twenty-one days after service of PPI's motion to dismiss. *See* Fed. R. Civ. P. 15(a)(1)(B).

Zenith's first amended counterclaims assert three counts. Under its first cause of action, Zenith raises a counterclaim for breach of contract against PPI. (FAC ¶¶ 30–41.) Zenith alleges that PPI materially breached the Agreement in four ways. First, Zenith alleges that PPI materially breached the Agreement by failing to convey, assign, or otherwise transfer its interest in the Tools and Die Molds by August 15, 2023. (*Id.* ¶ 32.) Second, Zenith alleges that PPI materially breached the Agreement by failing to physically transport the Tools and Die Molds to Zenith by August 15, 2023. (*Id.* ¶ 33.) Third, Zenith alleges that PPI materially breached the agreement by failing to convey, assign, or otherwise transfer its interests in the intellectual property to Zenith by August 15, 2023. (*Id.* ¶ 34.) And fourth, Zenith alleges that PPI materially breached the Agreement by failing to advise third parties of Zenith's ownership interest in the intellectual property as well as the requirement to secure Zenith's consent for any intellectual property use by August 15, 2023. (*Id.* ¶ 35.) Zenith asserts that it has incurred

actual, incidental, and consequential damages as a result of these breaches. (*Id.* ¶ 40.) Zenith claims damages in the amount of $500,000.00 due to PPI's breaches. (*Id.* ¶ 41.) In addition, Zenith alleges that, should it prevail on this claim, it is entitled to recover reasonable attorney's fees and expenses based on the language of the Agreement. (*Id.* ¶ 39.)

Under its second cause of action, Zenith raises a counterclaim seeking a declaratory judgment. (*Id.* ¶¶ 42–54.) Specifically, Zenith seeks a declaratory judgment "that PPI's breaches of the Agreement occurred first in time; that PPI's breaches were material, and because of and after PPI's breaches, Zenith was excused from its other and further obligations under the Agreement." (*Id.* ¶ 43.) While PPI asserted in its complaint that Zenith breached the Agreement in October 2023, Zenith seeks a declaration that PPI actually breached first, on August 15, 2023. (*Id.* ¶¶ 52–53.)

Under its third cause of action, Zenith raises, in the alternative, an unjust enrichment claim. (*Id.* ¶¶ 55–59.) Zenith alleges that it complied with the Agreement by beginning its payments to PPI, in the amount of $500,000.00. (*Id.* ¶ 57.) Because of PPI's first and material breaches of the Agreement, Zenith alleges that "it would be unjust for PPI to retain the benefit of the tendered payments." (*Id.* ¶ 58.) Zenith claims damages, as a result of PPI's unjust enrichment, in the amount of $500,000.00 "plus its attorneys' fees and costs, and pre-judgment interest at the statutory rate from the date of PPI's first breach of the Agreement through the date judgment is entered." (*Id.* ¶ 59.)

On August 12, 2024, PPI filed a motion to dismiss Zenith's first amended counterclaims, (Dkt. 16), and memorandum in support of that motion, (Dkt. 17 [hereinafter "PPI Br."].) On August 26, 2024, Zenith filed a response in opposition to the motion. (Dkt.

5

27 [hereinafter "Zenith Resp."].)  And on September 3, 2024, PPI filed a reply in support of the motion.  (Dkt. 34 [hereinafter "PPI Reply"].)  On October 29, 2024, the court held a hearing on the motion.  (Dkt. 42.)

## II.    Standard of Review

"A counterclaim is treated like any other claim, and when it is challenged under Federal Rule of Civil Procedure 12(b)(6) the same standards apply." *Rsrv. at Winchester I, LLC v. R 150 SPE, LLC*, No. 3:21-cv-00008, 2022 WL 2161518, at *3 (W.D. Va. June 15, 2022) (citing *Kolon Indus.*, 637 F.3d at 440).  Motions to dismiss under Rule 12(b)(6) test the legal sufficiency of a complaint.  *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999).  They do not "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses."  *Bing v. Brivo Sys., LLC*, 959 F.3d 605, 616 (4th Cir. 2020) (quoting *King v. Rubenstein*, 825 F.3d 206, 214 (4th Cir. 2016)).  To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead sufficient factual allegations to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

In reviewing a motion to dismiss for failure to state a claim, "a court must consider the factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff."  *Bing*, 959 F.3d at 616.  Evaluation is generally limited to the complaint itself.  Fed. R. Civ. P. 12(d).  However, a court may also examine documents attached to the complaint as exhibits or those explicitly incorporated into the complaint by reference.  Fed. R. Civ. P. 10(c); *see Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 166 (4th Cir. 2016).

6

### III.    Analysis

**A. Choice of Law**

Federal courts sitting in diversity must apply the choice of law rules of the forum state—in this case, Virginia. *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496–97 (1941). Virginia enforces contractual choice of law provisions, "giving them full effect except in unusual circumstances." *Hitachi Credit Am. Corp. v. Signet Bank*, 166 F.3d 614, 624 (4th Cir. 1999) (citing *Tate v. Hain*, 25 S.E.2d 321, 324 (Va. 1943)). The Agreement includes such a provision, explaining that the "Agreement shall be considered to have been negotiated, executed, and delivered, and to be wholly performed, in the Commonwealth of Virginia, and the rights and obligations of the parties to this Agreement shall be construed and enforced in accordance with, and governed by, the internal, substantive laws of the Commonwealth of Virginia." (Dkt. 17-1 at 12.)[1] Therefore, the court will apply Virginia law.

**B. Breach of Contract (Counterclaim I)**

In its first counterclaim, Zenith alleges that PPI breached the Agreement in four different ways. According to Zenith, PPI breached the contract by (1) failing to transfer its interests in the Tools and Die Molds to Zenith, (2) failing to physically transport the Tools and Die Molds to Zenith, (3) failing to transfer its interests in the intellectual property to Zenith, and (4) failing to warn various third parties about Zenith's ownership of the intellectual

---

[1] For the purposes of analyzing the choice of law, the court considers the Agreement attached by PPI as an exhibit to its memorandum in support of its motion to dismiss (Ex. 1 (Dkt. 17-1)), because it is integral to and explicitly relied on by the First Amended Counterclaims and because Zenith does not challenge its authenticity. *Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 234 (4th Cir. 2004); *see also Clark v. Liberty Univ., Inc.*, No. 6:20-cv-58, 2021 WL 1827256, at *4 (W.D. Va. May 7, 2021) ("[A] document attached to a defendant's motion to dismiss may be considered in determining whether to dismiss [a] complaint [if] it was integral to and explicitly relied on in the complaint and [if] the plaintiffs do not challenge its authenticity." (internal quotations omitted)).

property.  (*See* FAC ¶¶ 32–35.)  PPI's motion to dismiss narrowly addresses only the second of those methods of breach, arguing that the Agreement did not create an obligation for PPI to physically transport to the Tools and Die Molds to Zenith.[2]  (PPI Br. at 5).

Under Virginia law, "[t]he elements of a breach of contract action are (1) a legally enforceable obligation of a defendant to a plaintiff; (2) the defendant's violation or breach of that obligation; and (3) injury or damage to the plaintiff caused by the breach of obligation." *Filak v. George*, 594 S.E.2d 610, 619 (Va. 2004).  PPI's argument concerns the first of these elements: whether the Agreement created a legally enforceable obligation for PPI to physically transport the Tools and Die Molds to Zenith.

PPI argues that Zenith's First Amended Counterclaims fail to state a breach of contract claim because the plain language of the Agreement does not obligate PPI to transport the Tools and Die Molds to Zenith.  (PPI Br. at 6–7.)  According to PPI, the plain meaning of the Agreement's language stating that "Zenith further understands that it is taking the Machinery 'as is, *where is*'" is that Zenith will take the Tools and Die Molds "where [it] is," at its present location.  (*Id.* at 7 (quoting FAC ¶ 8) (emphasis added).)  PPI argues that the plain meaning of that term leaves the buyer responsible for transportation, such that PPI did not have a contractual obligation to transport the Tools and Die Molds to Zenith.  (*Id.*)

Despite PPI's narrow targeting of the physical "transportation" method of breach, Zenith's response instead highlights PPI's obligation to "convey, assign, or otherwise transfer

---

[2] PPI concedes that the three other allegations of breach in Counterclaim I—namely, (1) PPI's failure to transfer its interest in the Tools and Die Molds, (2) PPI's failure to transfer its interest in the intellectual property, and (3) PPI's failure to warn certain third parties about Zenith's rights with respect to the intellectual property—are not addressed by its motion. (*See* PPI Br. at 9 n.3.)  Thus, those portions of the counterclaim will survive the motion to dismiss stage.

8

its rights" to the Tools and Die Molds, which in the court's view pertains to the first method of breach as laid out by Zenith in its response. (FAC ¶ 32 ("PPI materially breached and remains in breach of its obligations under the Agreement by, including without limitation, failing to convey, assign or otherwise transfer to Zenith all of PPI's interests in the Tools and Die Molds . . . ."); *see* Zenith Resp. at 7–10.)[3] Zenith does not appear to address the second method by which it claims PPI breached the Agreement: that "PPI materially breached and remains in breach of its obligations under the Agreement by, including without limitation, failing to transport or convey . . . the Tools and Die Molds to Zenith." (FAC ¶ 33.)

Interpretation of a contract is a question of law for the court to consider. *Palmer & Palmer Co. v. Waterfront Marine Constr., Inc.*, 662 S.E.2d 77, 80 (Va. 2008). The court will "construe the contract as a whole, giving terms their ordinary meaning unless some other meaning is apparent from the context." *Schuiling v. Harris*, 747 S.E.2d 833, 836 (Va. 2013). The court may properly construe a contract "when it is clear and unambiguous on its face." *Online Res. Corp. v. Lawlor*, 736 S.E.2d 886, 894 (Va. 2013). To determine whether a contract's language is ambiguous, the court looks "look[s] at the words at issue within the four corners of the [contract] itself." *Eure v. Norfolk Shipbuilding. & Drydock Corp.*, 561 S.E.2d 663, 668 (Va. 2002). A contract term is ambiguous if it can reasonably carry "two or more meanings, [be] understood in more than one way, or [refer] to two or more things at the same time." *Aetna Cas. & Sur. Co. v. Fireguard Corp.*, 455 S.E.2d 229, 232 (Va. 1995).

---

[3] Because whether PPI breached the Agreement by failing to transfer its rights in the Tools and Die Molds is not an issue raised in PPI's motion, the court declines to address that portion of the claim. Accordingly, the court takes no position on the arguments Zenith raises with respect to that alleged method of breach.

9

PPI's narrow argument that the plain language of the Agreement does not obligate it to physically *transport* or physically *convey* the Tools and Die molds is persuasive. While the counterclaim alleges that PPI was to transfer or convey *its interest* in the Tools and Die Molds, the contractual language that Zenith cites does not create an obligation to physically transport the Tools and Die Molds themselves. In fact, the Agreement language is unambiguous that it is Zenith who is responsible for transportation, despite Zenith's allegation in its Counterclaim. (*Compare* FAC ¶ 8 ("Zenith further understands that it is taking the Machinery 'as is, where is' and shall be responsible for bearing all costs related to the shipping, handling, and transportation . . . ." (quoting Agreement § 1.3(a)) *with id.* ¶ 19 ("The Agreement required PPI to transport the Machinery . . . .").) The plain language of the Agreement states that Zenith is both responsible for the costs of transportation and "taking the Machinery 'as is, where is.'" (*Id.* ¶¶ 8–9.) Because the Agreement clearly and unambiguously does not create an obligation for PPI to transport the Tools and Die Molds, the court will grant PPI's motion to dismiss Counterclaim I.[4]

## C. Declaratory Judgment (Counterclaim II)

In its second counterclaim, Zenith seeks a declaratory judgment stating that "PPI's breaches of the Agreement occurred first in time; that PPI's breaches were material, and because of and after PPI's breaches, Zenith was excused from its other and further obligations under the Agreement." (*See id.* ¶ 43; *see also id.* ¶ 54 ("Zenith is entitled to a declaratory judgment finding that Zenith is excused from performance subsequent to PPI's material

---

[4] Based on the unambiguous contract language, the court does not address PPI's alternative argument concerning Uniform Commercial Code § 2-308.

breaches.").) PPI argues that Zenith's declaratory judgment action is unavailable because the conduct at issue and the associated damage have already accrued. (PPI Br. at 9–10.) PPI submits that declaratory judgment actions are a forward-looking mechanism and cannot be asserted when the alleged wrongs have already been suffered. (*Id.* at 9.) In particular, PPI claims that all of the allegations in Zenith's counterclaim fail to state a claim "because it seeks to litigate the parties' past conduct," namely, who breached the Agreement first. (*Id.* at 10.)

Under the Declaratory Judgment Act, "[i]n a case of actual controversy within its jurisdiction, . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). However, "[d]istrict courts possess discretion in determining whether and when to entertain an action under the Declaratory Judgment Act, even when the suit otherwise satisfies subject matter jurisdictional prerequisites." *Metra Indus., Inc. v. Rivanna Water & Sewer Auth.*, No. 3:12CV00049, 2014 WL 652253, at *2 (W.D. Va. Feb. 19, 2014) (quoting *Wilton v. Seven Falls Co.*, 515 U.S. 277, 282 (1995)). Indeed, under Fourth Circuit precedent, "a district court may decline to entertain a declaratory judgment claim when it has 'good reason' to do so." *Variety Store, Inc. v. Martinsville Plaza, LLC*, No. 4:19CV00031, 2020 WL 1052525, at *3 (W.D. Va. Mar. 4, 2020) (quoting *Volvo Constr. Equip. N. Am., Inc. v. CLM Equip. Co.*, 386 F.3d 581, 594 (4th Cir. 2004)). In determining whether to exercise declaratory jurisdiction, the court considers two objectives: whether declaratory relief would "serve a useful purpose in clarifying and settling the legal relations in issue," and whether the judgment would "terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." *Id.* (citation and internal quotation marks omitted).

11

Courts frequently find "good reason" to decline to hear declaratory judgment claims when a breach of contract claim already covers the dispute between the parties, as neither objective would be served. Such is the case here. First, issuing the requested declaratory relief would not serve a useful purpose. "[C]ourts have repeatedly recognized that [a] declaratory judgment serves no useful purpose when it seeks only to adjudicate an already-existing breach of contract claim." *Metra Indus.*, 2014 WL 652253, at *2 (collecting cases) (internal quotation marks omitted). Zenith's declaratory judgment counterclaim, as pled, seeks only to resolve issues adequately raised in its breach of contract counterclaim or adequately addressed in its own affirmative defenses to PPI's original breach of contract claim. Zenith primarily seeks a declaration that "PPI's breaches of the Agreement occurred first in time; that PPI's breaches were material[;] and because of and after PPI's breaches, Zenith was excused from its other and further obligations under the Agreement." (FAC ¶ 43.) Because Zenith's declaratory judgment claim seeks to resolve legal issues that are already raised in the breach of contract claim, the court finds that such relief is duplicative and will not serve a useful purpose in settling the legal relationship between the parties.

Second, there is no indication that Zenith's requested declaratory judgment is necessary to "afford relief from the uncertainty" that gave rise to this proceeding. *Variety Store, Inc.*, 2020 WL 1052525, at *3. Indeed, both parties have raised breach of contract claims over the Agreement in their respective pleadings. Consequently, a declaration that PPI's breach was material and occurred first in time involves the adjudication of "past conduct," which "does not satisfy the requirements of a declaratory judgment action." *FDIC v. Bd. of Supervisors*, No. 1:11–cv–1394, 2012 WL 3017862 (E.D. Va. July 23, 2012) (citing *Beazer Homes Corp. v.*

12

*VMIF/Anden Southbridge Venture, L.P.*, 235 F. Supp. 2d 485, 494 (E.D. Va. 2002)). Accordingly, the court will grant PPI's motion to dismiss Counterclaim II.

### D. Unjust Enrichment (Counterclaim III)

In its third counterclaim, Zenith alleges a claim of unjust enrichment. (*See* FAC ¶¶ 55–59.) Under Virginia law, to recover under an unjust enrichment theory, a plaintiff must show that "(1) the plaintiff conferred a benefit on the defendant; (2) the defendant knew of the benefit and should reasonably have expected to repay the plaintiff; and (3) the defendant accepted or retained the benefit without paying for its value." *James G. Davis Constr. Corp. v. FTJ, Inc.*, 841 S.E.2d 642, 650 (Va. 2020) (citation omitted). However, "[a]n action for unjust enrichment is quasi-contractual in nature and may not be brought in the face of an express contract." *Acorn Structures, Inc. v. Swantz*, 846 F.2d 923, 926 (4th Cir. 1988). Thus, an unjust enrichment claim is unavailable where an express contract exists that covers the benefits the plaintiff claims to have conferred on the defendant. *See Lion Assocs., LLC v. Swiftships Shipbuilders, LLC*, 475 F. App'x 496, 503 (4th Cir. 2012) (finding unjust enrichment unavailable where "an express contract exists that covers the services it rendered in connection with" the purported benefit).

PPI argues that Zenith's unjust enrichment claim should be dismissed because the Agreement, an express contract, governs the exact subject matter of the dispute. (PPI Br. at 10–11.) PPI's argument is persuasive. Zenith's alleged benefit to PPI includes the payment Zenith made "in accordance with the terms of the Agreement." (FAC ¶ 56.) The court finds that all the purported benefits that Zenith claims to have conferred on PPI as part of its unjust enrichment claim are covered by the Agreement.

13

In its response, Zenith points out that, under Virginia law, a plaintiff is not barred from pleading an unjust enrichment claim in the alternative where the existence of the express contract concerning the subject matter is in dispute. (Zenith Resp. at 11–12.) Zenith argues that based on its allegations, the language of the Agreement is "ambiguous," and that taking the allegations in the light most favorable to Zenith, "there is a possibility that [the court] will find that the Agreement is invalid, void, voidable, modified or that Zenith is otherwise precluded from recovering." (*Id.* at 12.) In addition, Zenith highlights that PPI itself asked for the court to rescind the Agreement in its own complaint. (*Id.* at 12 & n.40 (citing Compl. at 10).)

While a plaintiff cannot simultaneously recover in contract and in quasi-contract, such as unjust enrichment, Zenith is correct that it is possible for a plaintiff to plead these causes of action in the alternative. *See Colonna's Shipyard, Inc. v. Coastal Cement Corp.*, No. 2:22cv395, 2023 WL 3321734, at *3 (E.D. Va. May 9, 2023) (citing Fed. R. Civ. P. 8(d)). However, in order to do so, the validity or enforceability of the contract must be in dispute. *McPike v. Zero-Gravity Holdings, Inc.*, 280 F. Supp. 3d 800, 809–10 (E.D. Va. 2017) ("Although it makes perfect sense for a plaintiff to plead quasi-contractual claims in the alternative when the applicability or enforceability of the contract is in dispute, the rationale for alternative pleading disappears when neither party contests the applicability or validity of the contract."). By contrast, if the parties do not dispute the contract's enforceability or scope, then a breach of contract claim precludes a claim for unjust enrichment and the latter must be dismissed. *See id. at* 810; *Colonna's Shipyard*, 2023 WL 3321734, at *3. Here, neither party challenges the validity or

14

enforceability of the contract.[5]  Both parties represented to the court at the hearing that the Agreement was a binding and enforceable contract.  Thus, because neither party challenges the validity of the Agreement, Zenith's counterclaim for unjust enrichment is unavailable.  As a result, the court will grant PPI's motion to dismiss Counterclaim III.

## V. Conclusion

For the foregoing reasons, PPI's motion to dismiss for failure to state a claim (Dkt. 16) is **GRANTED**.  An appropriate Order will follow.

**ENTERED** this 13th of November, 2024.

/s/ *Jasmine H. Yoon*

HON. JASMINE H. YOON
UNITED STATES DISTRICT JUDGE

---

[5] While PPI asserts a claim for "Fraudulent Inducement" in its complaint, (*see* Compl. ¶¶ 56–66), that claim is properly pled in the alternative by alleging an alternative set of facts to support the claim.