CLERKS OFFICE U.S. DIST. COURT
AT CHARLOTTESVILLE, VA
FILED
April 25, 2025
LAURA A. AUSTIN, CLERK
BY: s/ D. AUDIA
    DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

| | |
|---|---|
| PPI/TimeZero, Inc., | ) |
| Plaintiff, | ) |
| v. | ) Civil Action No. 3:24-cv-00037 |
| Zenith Firearms, Inc., | ) |
| Defendant, | ) |
| v. | ) |
| SouthStar Financial, LLC | ) |
| and | ) |
| Critzer Road Holdings, LLC, | ) |
| Intervenor-Defendants. | ) |

**MEMORANDUM OPINION AND ORDER**

This matter is before the court on "PPI/TimeZero, Inc.'s Motion to Dismiss SouthStar Financial LLC's Counterclaim." (Dkt. 68 [hereinafter "PPI Mot."].) For the reasons that follow, the court will grant the motion to dismiss.

**I.   Background**

Facts alleged in SouthStar Financial, LLC's ("SouthStar") Counterclaim are accepted as true for the purpose of resolving the motion. *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011); *Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009).

On or around February 26, 2019, Zenith Firearms, Inc. ("Zenith") and certain Zenith-affiliated entities executed a "Non-Recourse Factoring Agreement and Security Agreement" as well as other financing documents (collectively, the "Factoring Agreement") with SouthStar. (SouthStar's Countercl. Against PPI and Cross-cl. Against Zenith ¶ 9 (Dkt. 61) [hereinafter "Countercl."].)  The Factoring Agreement detailed that SouthStar would "provide capital to Zenith in return for being granted and taking a first priority security interest in all of Zenith's assets, including the Collateral (as defined [in the following paragraph and footnote]), vehicles, real property, inventory, and machinery, as well as in Zenith's accounts receivable by way of Zenith selling, assigning, and transferring its payment and other rights in certain receivables to SouthStar pursuant to the terms of the Factoring Agreement." (*Id.*)  SouthStar filed a UCC-1 financing statement pursuant to its rights under the Factoring Agreement on October 26, 2018.  (*Id.* ¶ 10.)  SouthStar believes that the majority of Zenith's assets are located on real property in Afton, Virginia.  (*Id.* ¶ 12.)

On August 4, 2023, PPI/TimeZero, Inc. ("PPI") and Zenith entered into a "Settlement Agreement" in which PPI agreed to transfer certain machinery and inventory to Zenith.  (*Id.* ¶ 7.)  SouthStar was not a party to the Settlement Agreement.  (*Id.* ¶ 8.)  As part of the original lawsuit in this case, PPI sued Zenith for breach of contract, and alleging that Zenith granted PPI a purchase money security interest ("PMSI") in "the Collateral."  (*Id.* ¶ 13.)  As defined by the Settlement Agreement, the Collateral includes inventory and certain machinery.[1]  (*See*

---

[1] SouthStar's Counterclaim assumes that "the Collateral" as defined by the Security Agreement between PPI and Zenith encompasses the same assets covered by the PMSI. (*See id.* at 13 n.3.)  "The Settlement Agreement defines the 'Collateral' as . . . all of Zenith's right, title and interest in and to each of the following, and whether now or hereafter existing, or now owned or hereafter acquiring or arising, wherever located, any of the foregoing: (y) all inventory and (z) Machinery (defined below) set forth in Schedule 1.3(a), purchased under this Agreement from PP[I]."  (*Id.* ¶ 14.)  And "Machinery" includes

-2-

*id.* ¶¶ 14–15.) PPI filed a UCC-1 financing statement on or around September 1, 2023, which it alleges covers the Collateral. (*Id.* ¶ 16.)

Zenith's obligations owed to SouthStar under the Factoring Agreement are "well in excess of the value and/or amount of the Collateral at sale, auction, or otherwise." (*Id.* ¶ 20.) So, SouthStar claims, in part, that it possesses a senior perfected security interest in the Collateral, superior to PPI and all others. (*Id.* ¶ 19.)

Accordingly, SouthStar intervened in the lawsuit between PPI and Zenith, asserting a counterclaim against PPI, (*see id.* ¶¶ 23–40), and a cross-claim against Zenith, (*see id.* ¶¶ 41–49.) However, SouthStar includes only one prayer for relief under both the counterclaim and cross-claim. (*See id.* at 19–20). That prayer for relief requests the court enter an order authorizing foreclosure of the Collateral with proceeds going first to SouthStar, enter a number of declaratory judgments stating that SouthStar's interests are senior and superior to those of PPI, and—relevant to this motion to dismiss—"[a]ward SouthStar its actual and consequential damages, attorney's fees and costs, and other such costs and fees as permitted by the Court." (*Id.*)

Following SouthStar's counterclaim and cross-claim, PPI filed a partial motion to dismiss. (*See* PPI Mot.) After SouthStar filed an opposition memorandum (Intervenor-Def./Counterclaimant SouthStar Financial LLC's Mem. of Law in Opp'n to P./Counterclaim-Def. PPI/Time Zero, Inc.'s Mot. to Dismiss (Dkt. 72) [hereinafter "SouthStar Opp'n"]), PPI

---

"(1) All racks for raw materials (steel) handling; (2) 3 x Horizontal CNC lathes (1 with additional vertical head); (3) 1 x Haas 5 axis, CNC workstation included; (4) Lab equipment component for 'Hardness Testing'; (5) 2 X Peening machines used to peen over Mag Release Paddle rivet Rock Tumbler (currently located in lathe area); (6) Five tools currently with vendor to be included - specifically, (a) 2 sets of Flat stamping dies; (b) Forearm; (c) Grip; and (d) Cocking Lever tools/molds." (*Id.* ¶ 15.)

filed a reply, (PPI/TimeZero, Inc.'s Omnibus Reply in Supp. of its Mot. to Dismiss (Dkt. 73) [hereinafter "PPI Reply"]).

## II.    Standard of Review

"A counterclaim is treated like any other claim, and when it is challenged under Federal Rule of Civil Procedure 12(b)(6) the same standards apply." *Rsrv. at Winchester I, LLC v. R 150 SPE, LLC*, No. 3:21-cv-00008, 2022 WL 2161518, at *3 (W.D. Va. June 15, 2022) (citing *Kolon Indus.*, 637 F.3d at 440). Motions to dismiss under Rule 12(b)(6) test the legal sufficiency of a complaint. *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). They do not "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Bing v. Brivo Sys., LLC*, 959 F.3d 605, 616 (4th Cir. 2020) (quoting *King v. Rubenstein*, 825 F.3d 206, 214 (4th Cir. 2016)). To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead sufficient factual allegations to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

In reviewing a motion to dismiss for failure to state a claim, "a court must consider the factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff." *Bing*, 959 F.3d at 616. Evaluation is generally limited to the complaint itself. Fed. R. Civ. P. 12(d). However, a court may also examine documents attached to the complaint as exhibits or those explicitly incorporated into the complaint by reference. Fed. R. Civ. P. 10(c); *see Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 166 (4th Cir. 2016).

### III. Analysis

**A. Attorney's Fees**

Paragraph G of SouthStar's prayer for relief asks that the court "[a]ward SouthStar its . . . attorney's fees and costs." (Countercl. at 20.) In its short and straightforward motion, PPI argues that any counterclaim for attorney's fees and costs against it must necessarily fail under Virginia law. That is because, according to PPI, SouthStar has "failed to identify a statutory or other legal basis for its claim for attorneys' fees and costs" in its counterclaim. (PPI Mot. at 2.)

PPI makes a persuasive point. Virginia adheres to the "American Rule," which creates a presumption that "absent a specific contractual or statutory provision to the contrary, attorney's fees are not recoverable by a prevailing litigant from the losing litigant." *Mullins v. Richlands Nat. Bank*, 403 S.E.2d 334, 335 (Va. 1991). And because SouthStar points to no such contractual or statutory provision with respect to PPI, any counterclaim to attorney's fees and costs must fail.

SouthStar responds that its "request and demand for attorney's fees is not aimed at PPI, but at Zenith, such that PPI's motion should be denied." (SouthStar Opp'n at 2.) It claims that contained within the Factoring Agreement between SouthStar and Zenith exists language permitting the recovery of attorney's fees.

But things are not so obvious. It is not clear from SouthStar's prayer for relief exactly from whom attorney's fees and costs are requested. Indeed, SouthStar's Paragraph G includes a generalized request for a court award of attorney's fees and costs. To extinguish any ambiguity, the court will grant PPI's motion to dismiss any counterclaim to attorney's fees and

costs against it. "The court welcomes the opportunity to potentially narrow the issues that would otherwise need to be resolved at trial." *Remy Holdings Int'l, LLC v. Fisher Auto Parts, Inc.*, No. 5:19-CV-00021, 2022 WL 198851, at *2 (W.D. Va. Jan. 21, 2022). The court takes no position on whether attorney's fees and costs are appropriate in SouthStar's cross-claim against Zenith. Going forward, however, SouthStar's claim for an award of attorney's fees and costs is asserted via cross-claim against Zenith only.

### V.     Conclusion

For the foregoing reasons, PPI's partial motion to dismiss for failure to state a claim (Dkt. 68) is **GRANTED**.

The clerk is directed to forward copies of this Memorandum Opinion and Order to the parties.

**ENTERED** this 25th of April, 2025.

_____
HON. JASMINE H. YOON
UNITED STATES DISTRICT JUDGE