Case 3:24-cv-00037-JHY-CKM    Document 90    Filed 05/29/25    Page 1 of 17
Pageid#: 844

CLERKS OFFICE U.S. DIST. COURT
AT CHARLOTTESVILLE, VA
FILED
May 29, 2025
LAURA A. AUSTIN, CLERK
BY: s/ D. AUDIA
     DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

| | |
|---|---|
| PPI/TimeZero, Inc., | ) |
| Plaintiff, | ) |
| v. | ) Civil Action No. 3:24-cv-00037 |
| Zenith Firearms, Inc., | ) |
| Defendant, | ) |
| v. | ) |
| SouthStar Financial, LLC | ) |
| and | ) |
| Critzer Road Holdings, LLC, | ) |
| Intervenor-Defendants. | ) |

**MEMORANDUM OPINION**

This matter is before the court on "PPI/TimeZero, Inc.'s Motion to Dismiss Critzer Road Holdings, LLC's Counterclaim." (Dkt. 69 [hereinafter "PPI Mot."].) For the reasons that follow, the court will grant in part, and deny in part, the motion to dismiss.

### I.   Background

Facts alleged in Critzer Road Holdings, LLC's ("Critzer") Counterclaim are accepted as true for the purpose of resolving the motion. *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011); *Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009).

1

On or around December 15, 2023, Critzer took ownership of the real property located at 10517 Critzer Shop Road, Afton, Virginia 22920 (the "Real Property"). (Critzer's Countercl. Against PPI and Cross-cl. Against Zenith ¶ 9 (Dkt. 60) [hereinafter "Countercl."].) Critzer came to own the Real Property through a General Warranty Deed from Kaya Properties, LLC. (*Id.*) The deed was recorded in the Nelson County Circuit Court Office on December 19, 2023. (*Id.*)

In connection with taking ownership of the Real Property, Kaya Properties, LLC "assigned all of its right, title, and interest in and to that certain Zenith Firearms Entities Commercial Lease Agreement dated January 31, 2023 (the 'Lease') to Critzer Holdings by way of that Assignment and Assumption of Lease dated December 15, 2023 (the 'Lease Assignment')." (*Id.* ¶ 10.) Accordingly, Critzer is currently Zenith Firearms, Inc.'s ("Zenith") landlord. (*Id.*) The Lease was later amended to identify outstanding rent due under the Lease. (*Id.* ¶ 11.) At the time of the amendment, the unpaid rent due was approximately $240,000.00. (*Id.* ¶ 12.) The balance due currently "is in excess of $240,000.00." (*Id.* ¶ 13.)

Critzer alleges that it "has perfected Landlord lien rights under Virginia law including, but not limited to, Virginia Code Annotated §§ 43-30; § 8.01-130-130.09 ('Landlord Lien Rights'), on and against the Real Property and all personal property and goods of Zenith and the other tenants that are located thereon." (*Id.* ¶ 14.) Based on those rights, "any creditor of Zenith and the other tenants under the Lease shall not be permitted to remove any goods or property from the Real Property until such time that the creditor first pay[s] the Landlord such amounts owed under the Lease for rent as required by statute." (*Id.* ¶ 15.)

On April 25, 2024, Critzer filed a UCC-1 Financing Statement and fixture filing—recorded in the Nelson County Clerk's Office—which asserted and identified its Landlord Lien Rights. (*Id.* ¶ 16.)

On August 4, 2023, PPI/TimeZero, Inc. ("PPI") and Zenith entered into a "Settlement Agreement" in which PPI agreed to transfer certain machinery and inventory to Zenith (the "Collateral"). (*Id.* ¶ 7.) Critzer was not a party to the Settlement Agreement. (*Id.* ¶ 8.) As part of the original lawsuit in this case, PPI sued Zenith for breach of contract, alleging in part that Zenith had granted PPI a purchase money security interest ("PMSI") in the Collateral. (*Id.* ¶ 17.) As defined by the Settlement Agreement, the Collateral includes "all of Zenith's right, title and interest in and to each of the following, and whether now or hereafter existing, or now owned or hereafter acquiring or arising, wherever located, any of the foregoing: (y) all inventory and (z) Machinery (defined below) set forth in Schedule 1.3(a), purchased under this Agreement from PP[I]." (*Id.* ¶ 18.) And "Machinery" as defined in the Settlement Agreement included "(1) All racks for raw materials (steel) handling; (2) 3 x Horizontal CNC lathes (1 with additional vertical head); (3) 1 x Haas 5 axis, CNC workstation included; (4) Lab equipment component for 'Hardness Testing'; (5) 2 X Peening machines used to peen over Mag Release Paddle rivet Rock Tumbler (currently located in lathe area); (6) Five tools currently with vendor to be included - specifically, (a) 2 sets of Flat stamping dies; (b) Forearm; (c) Grip; and (d) Cocking Lever tools/molds." (*Id.* ¶ 19.)

PPI filed a UCC-1 financing statement on or around September 1, 2023, which it alleges covers the Collateral. (*Id.* ¶ 20.) Critzer alleges that PPI does not have a valid, enforceable, or perfected PMSI in the Collateral because it did not "comply with the requirements contained

3

in UCC § 9-103 as codified by Va. Code. Ann. § 8.9A-103." (*Id.* ¶¶ 21–22.) As a result, Critzer alleges it "has a Landlord's Lien and Landlord Lien Rights that arose and attached prior to September 1, 2023, and by statute are senior and superior to that of PPI subject to the express terms of Virginia statute and Landlord Lien Rights." (*Id.* ¶ 23.) Critzer claims Zenith owed rent under the Lease in excess of the value of the Collateral. (*Id.* ¶ 24.)

Critzer intervened in the lawsuit between PPI and Zenith, asserting a counterclaim against PPI for a declaratory judgment, (*see id.* ¶¶ 25–33), and a cross-claim against Zenith for foreclosure, (*see id.* ¶¶ 34–41.) As relief, Critzer requests that the court:

> A. Enter an Order of Declaratory Judgment declaring that Critzer Holdings holds perfected landlord liens and Landlord Lien Rights on all of Zenith's inventory, personal property, and assets that are located on the Real Property Leased Premises to secure all rent amounts due under the Lease from Zenith that is senior to the interests of all other parties, including PPI;
>
> B. Enter an Order of Declaratory Judgment declaring that Critzer Holdings holds a perfected first-priority security interest or Landlord lien in all of Zenith's property and assets located on the Real Property including the Collateral claimed by PPI that is senior to and has priority over PPI's interest up to the amount of outstanding rent due under the Lease or as specified by applicable statute;
>
> C. Enter an Order of Declaratory Judgment that PPI (or any other creditor) shall not be permitted to take immediate possession of any Zenith assets or property located on the Real Property Leased Premises until such time that Critzer Holdings is paid the outstanding rent due under the Lease or the Virginia Landlord Lien Rights are otherwise satisfied pursuant to the applicable statutes;
>
> D. Enter an Order for the foreclosure of Critzer Holdings' first-priority Landlord's Lien;
>
> E. That if any Order be entered for the sale of the any of Zenith's assets located on the Real Property Leased premises, including the Collateral, that to proceeds derived from any such sale shall first be paid directly to Critzer Holdings to satisfy any rent obligations owed under the Lease;

> F. Inquire into the facts and matters alleged herein and preserve and protect the interests of Critzer Holdings in the Collateral and other assets of Zenith;
>
> G. Award actual and consequential damages, attorney's fees and costs, and other such costs and fees as permitted by the Court; and
>
> H. Grant such other and further relief as the Court deems just and appropriate.

(*Id.* at 17–18.)

Following Critzer's counterclaim and cross-claim, PPI filed a motion to dismiss, (*see* PPI Mot.), and memorandum in support, (*see* Mem. of Law in Supp. of PPI's Mot. to Dismiss Critzer's Countercl. (Dkt. 70) [hereinafter "PPI Mem."]). After Critzer filed an opposition memorandum, (*see* Intervenor-Def./Counterclaimant Critzer's Mem. in Opp'n to P./Countercl.-Def. PPI's Mot. to Dismiss (Dkt. 71) [hereinafter "Critzer Opp'n"]), PPI filed a reply, (*see* PPI's Omnibus Reply in Supp. of Mots. to Dismiss (Dkt. 73) [hereinafter "PPI Reply"]).

## II.     Standard of Review

"A counterclaim is treated like any other claim, and when it is challenged under Federal Rule of Civil Procedure 12(b)(6) the same standards apply." *Rsrv. at Winchester I, LLC v. R 150 SPE, LLC*, No. 3:21-cv-00008, 2022 WL 2161518, at *3 (W.D. Va. June 15, 2022) (citing *Kolon Indus.*, 637 F.3d at 440). Motions to dismiss under Rule 12(b)(6) test the legal sufficiency of a complaint. *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). They do not "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Bing v. Brivo Sys., LLC*, 959 F.3d 605, 616 (4th Cir. 2020) (quoting *King v. Rubenstein*, 825 F.3d 206, 214 (4th Cir. 2016)). To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead sufficient factual allegations to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556

U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

In reviewing a motion to dismiss for failure to state a claim, "a court must consider the factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff." *Bing*, 959 F.3d at 616. Evaluation is generally limited to the complaint itself. *See* Fed. R. Civ. P. 12(d). However, a court may also examine documents attached to the complaint as exhibits or those explicitly incorporated into the complaint by reference. Fed. R. Civ. P. 10(c); *see Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 166 (4th Cir. 2016).

### III. Analysis

Critzer brings a single counterclaim cause of action against PPI, seeking a declaratory judgment to establish the priority of its security interests and confirmation of Critzer's possession of landlord lien rights. (Countercl. ¶¶ 25–33.) In particular, it claims that "[u]nder Virginia Code Annotated §§ 43-30 and 8.01-130-130.09, Critzer Holdings has statutory Landlord Lien Rights securing all outstanding rent obligations owed to it by and against the Collateral and other personal property of Zenith's located on the Real Property Leased Premises." (*Id.* ¶ 29.)

PPI makes two primary arguments as to why Critzer's counterclaim against it fails to state a claim. (*See* PPI Mot. at 2–4.) First, PPI argues that Critzer does not have a first-priority landlord lien pursuant to Virginia Code § 43-30. (*See* PPI Mem. at 6–7.) Second, PPI argues that Critzer does not have a lien pursuant to Virginia Code §§ 8.01-130 through 8.01-130.9. (*Id.* at 7–10.) PPI also argues that Critzer has not alleged any basis to support an award of

attorney's fees and costs as against PPI. (*Id.* at 11.) The court addresses each argument in turn.

### A. Virginia Code § 43-30

Critzer asserts, in part, that it has superior statutory landlord lien rights under Virginia Code Section 43-30. (Countercl. ¶ 29.) That section states that:

> The lien provided for in § 43-27 shall not affect in any manner the rights of the landlord to his proper share of rents, or his lien for rent or advances, or his right of distress or attachment for the same, nor any lien existing at the time of making the agreement mentioned in such section, which is required by law to be recorded and shall have been admitted to record. Nor shall it affect the right of the party to whom the advances have been made, to claim such part of his crops as is exempt from levy or distress for rent.

Va. Code Ann. § 43-30.

PPI argues that § 43-30 "does not provide for a landlord lien, nor does it grant a landlord rights which are superior to a purchase money security interest under the UCC." (PPI Mem. at 6.) The introductory language to the statute, according to PPI, specifically compares a "lien provided for in § 43-27" to "the rights of the landlord." (*Id.*) PPI points out that it does not have a "lien provided for in § 43-27," it instead has a PMSI. (*Id.* at 7.)

PPI's argument is persuasive. Section 43-30 trains its focus on "[t]he lien provided for in § 43-27." That particular type of lien—the statute provides—"shall not affect in any manner" certain rights belonging to a landlord. So, § 43-30 provides that a landlord has certain rights that have priority to those provided for by § 43-27. The court finds this statute inapplicable, as PPI's PMSI is not a lien provided for by § 43-27.

The counterclaim asserts that PPI was granted a PMSI in the Collateral by Zenith. (Countercl. ¶ 17.) It does not allege that PPI's PMSI in any way relates to § 43-27. Critzer

7

appears to acknowledge the fact that PPI's PMSI is not a lien provided for in § 43-27, as that section "was a crop lien statute which was repealed in 1964." (Critzer Opp'n at 7.) Instead, PPI's PMSI arises from the Uniform Commercial Code, codified at Virginia Code §§ 8.9A-103, 8.9A-314. Accordingly, the court finds that § 43-30 is inapplicable to the instant case, and Critzer's reliance on it is misplaced.

While acknowledging that § 43-27 has been repealed, Critzer claims that Virginia's statutory scheme "reveal[s] the longstanding existence and strong preference for landlord liens." (Critzer Opp'n at 9.) It urges the court to read all various sections together to "interpre[t] the effect and extent of and priority and rights to be given to landlord liens under Virginia law." (*Id.*) But Critzer's counterclaim cites § 43-30 as a basis for relief, not merely a gesture towards an interpretive principle. Critzer makes no persuasive argument that would permit the court to apply § 43-30 to PPI's PMSI, nor does it provide any citation to any case utilizing § 43-30 as a basis for relief, as its counterclaim asserts.[1]

Accordingly, the court will grant PPI's motion to dismiss the counterclaim insofar as Critzer relies on § 43-30 as a basis for relief to support its superior lien.[2]

**B.  Virginia Code §§ 8.010-130 through 8.010-130.9**

In its counterclaim, Critzer claims that it perfected its Landlord Lien rights under "§ 8.01-130-130.09."[3]  (Countercl. ¶ 14.) From its counterclaim, the court understands Critzer

---

[1] Critzer also provides no citation to any case that even references § 43-30 as part of "the longstanding existence and strong preference for landlord liens, and acknowledgement that they exist and arise independent of rights of distress or attachment." (Critzer Opp'n at 9.)

[2] Because the court finds § 43-30 inapplicable under the facts alleged by the counterclaim, the court takes no position on whether § 43-30 was repealed by implication after its referent statute, § 43-27, was formally repealed by the General Assembly in 1964.

[3] As PPI points out, there is no "8.01-130.09." Instead, the court understands Critzer to mean "130.9," as reflected in its responsive memorandum. (*See* Critzer Opp'n at 12–14.)

8

to be asserting the whole range of statutes from §§ 8.01-130 to 8.01-130.9 to support its superior lien as a landlord.[4]

PPI makes a number of arguments as to why this statutory range is either inapplicable or fails to support Critzer's basis for asserting a superior landlord lien.

1. Sections 8.01-130 and 8.01-130.01

First, PPI argues that §§ 8.01-130 and 8.01-130.01 are inapplicable as they relate to actions for "trespass, ejectment, and unlawful detainer," not landlord lien rights. (*See* PPI Mem. at 7–8.) Critzer does not oppose this argument. Accordingly, the court will grant PPI's motion to dismiss as it relates to §§ 8.01-130 and 8.01-130.01.

2. Sections 8.01-130.1 through 8.01-130.5, 8.01-130.7, and 8.01-130.8

Second, PPI argues that §§ 8.01-130.1 through 8.01-130.5, 8.01-130.7, and 8.01-130.8 do not apply as "[t]hese statutes lay out a scheme for a landlord to file a warrant in distress against a lessee to recover unpaid rent" and do not create a landlord lien. (*Id.* at 8.) PPI further asserts Critzer has not followed the procedural steps necessary to obtain a warrant in distress. (*Id.*)

As PPI correctly points out, these sections establish the statutory framework for filing a distress warrant under Virginia law. A distress warrant is a provisional remedy a landlord may use to recover rent. *See* Va. Code Ann. §§ 8.01-130.1 *et seq.* Specifically, a distress warrant is an "attachment procedure which effects a levy on the goods of the tenant before judgment." Va. Practice Series: Landlord-Tenant Handbook § 20:7 (2024). The statutory scheme allows

---

[4] That range includes §§ 8.01-130, 8.01-130.01, 8.01-130.1, 8.01-130.2, 8.01-130.3, 8.01-130.4, 8.01-130.5, 8.01-130.6, 8.01-130.7, 8.01-130.8, and 8.01-130.9.

9

a landlord to take action to recover rent from a lessee. Va. Code Ann. §§ 8.01-130.1, 8.01-130.2, 8.01-130.3. The landlord has up to five years from the time rent is due to bring the distress warrant. *Id.* § 8.01-130.4. To initiate a distress action, the landlord must file a sworn petition for *ex parte* review by a judge or magistrate. *Id.* Following issuance of the warrant, a sheriff of the county or city where the leased premises is located initiates the distress. *Id.* After distress is made by the sheriff, the case is tried within thirty days. *Id.* § 8.01-130.5. The statute also provides defenses that can be made by the lessee. *Id.* § 8.01-130.7. And following execution of the distress warrant, a judge must conduct a hearing to review the decision to issue the *ex parte* order and process. *Id.* § 8.01-130.8.

Upon the court's review of these statutes, none creates a landlord lien or references potential superiority to the holder of a lien such as a PMSI. Accordingly, the court will grant PPI's motion to dismiss as it relates to §§ 8.01-130.1 through 8.01-130.5, 8.01-130.7, and 8.01-130.8.

3. Section 8.01-130.6

Section 8.01-130.6 provides in part:

> The distress may be levied on any goods of the lessee, his assignee, or any sublessee that are found on the premises or that may have been removed from the premises not more than 30 days prior to the levy. A levy within such 30 days shall have like effect as if the goods levied on had not been removed from the leased premises. <u>If the goods of such lessee, assignee, or sublessee, when carried on the premises, are subject to a lien that is valid against his creditors, his interest only in such goods shall be liable to such distress</u> . . . .

Va. Code Ann. § 8.01-130.6 (emphasis added).

PPI asserts, based on the final underlined sentence quoted above, that "if a piece of property is subject to a lien at the time the lessee transports the property onto the

10

leased premises, then only the lessee's interest in the property is subject to distress." (PPI Mem. at 9.) According to PPI, a "landlord can levy on the lessee's interest in that property, but it cannot levy on a preexisting lienholder's interest." (*Id.*) PPI claims its lien on the Collateral began on August 4, 2023, when it signed the Settlement Agreement with Zenith. (*Id.*) And PPI submits that "[t]here is no dispute that Zenith subsequently transported the Collateral onto the premises it leased from Critzer." (*Id.*) So "[a]s Zenith's interest in the Collateral is inferior to PPI's PMSI, so too is Critzer's interest in the Collateral." (*Id.* at 10.)

Critzer first responds that PPI's interpretation "downplays the broad rights" found in the first sentence of § 8.01-130.6. (Critzer Opp'n at 9.) That sentence states that "[t]he distress may be levied on any goods of the lessee, his assignee, or any sublessee that are found on the premises or that may have been removed from the premises not more than 30 days prior to the levy." As a starting point, then, the court must analyze whether Critzer's counterclaim states a claim under § 8.01-130.6 by alleging that there are "goods" of its lessee, Zenith, located on the property or removed in the last thirty days.

Critzer's counterclaim briefly mentions the Collateral's location. In paragraph 28, Critzer alleges that "PPI is asserting a PMSI in certain inventory, assets, and property of Zenith's (the 'Collateral') that is located on the Real Property Leased Premises" at 10517 Critzer Shop Road. (Countercl. ¶ 28.) Drawing all reasonable inferences in Critzer's favor, the court interprets this allegation to mean that there is at least some portion of the Collateral on the leased property. Under § 8.01-130.6, then,

11

Critzer's claim is limited to that property—*i.e.*, "goods of [Zenith] . . . that are found on the premises"—and that property alone.  In other words, to the extent that Critzer asserts a superior lien regarding Collateral not yet on the leased property, § 8.01-130.6 is of no help.

The court next reviews PPI's argument concerning the timing of its PMSI.  Recall that under § 8.01-130.6, if the Collateral were transported onto the leased property with a preexisting lien, then only Zenith's unencumbered interest is subject to distress.  Critzer alleges that it had a "Landlord's Lien and Landlord Lien Rights" sometime before September 1, 2023.  (Countercl. ¶ 23.)  And it alleges that PPI asserts a lien based on a PMSI that was perfected on September 1, 2023.  (*Id.* ¶ 20.)  Nowhere in the counterclaim does Critzer allege *when* the Collateral made its way onto the leased property at 10517 Critzer Shop Road.[5]

For its part, PPI claims that its lien arose on August 4, 2023, when the Settlement Agreement was signed and a PMSI was consensually agreed to.  (*See* PPI Mem. at 9.)  PPI urges the court to consider the Settlement Agreement (and the date of August 4, 2023) "because it is integral to the Amended Complaint, and [because] there is no dispute that it is authentic." (*Id.* at 9 n.4 (citing *United States ex rel. Oberg v. Pa. Higher Educ. Assistance Agency*, 745 F.3d 131, 136 (4th Cir. 2014).)  While PPI is correct that a court may sometimes refer to a document integral to a complaint when

---

[5] Critzer asserts in its response brief that it "alleges that a significant amount of the Collateral made it to the Lease[d] Premises before August 4, 2023." (Critzer Opp'n at 11.)  But this allegation is not found in its counterclaim, and "[a]ssertions by counsel in a brief . . . are not allegations that must be credited on a motion to dismiss." *Rouse v. Harley-Davidson, Inc.*, No. 5:21-CV-39, 2021 WL 5500495, at *7 (E.D.N.C. Nov. 22, 2021).

analyzing a motion to dismiss that complaint, it provides no support for the proposition that the court may look to a document integral to *another* counterclaim complaint when analyzing a motion to dismiss a separate counterclaim complaint. The court therefore declines to consider the Settlement Agreement in determining whether to dismiss Critzer's counterclaim complaint.

At this juncture, it remains unclear when exactly the competing liens emerged. The court notes that this question is suitable for resolution at the summary judgment stage, when evidence can be marshalled to support or defeat competing claims to the Collateral. However, in analyzing Critzer's counterclaim at this stage, it is clear that—after taking everything alleged as true—it has stated enough to recover under § 8.01-130.6. The court takes no position on whether the last sentence (concerning the timing of liens when goods are "carried on the premises") will apply as discovery proceeds. Accordingly, the court will deny PPI's motion to dismiss as it relates to § 8.01-130.6 at this time.

4. <u>Section 8.01-130.9</u>

Section 8.01-130.9 provides in part:

> If, after the commencement of any tenancy, <u>a lien is obtained or created</u> by deed of trust, mortgage, or otherwise upon the interest or property in <u>goods on premises leased or rented</u> of any person liable for the rent, or such goods are sold, the party having such lien, or the purchaser of such goods, may remove them from the premises only on the following terms: On paying to the person entitled to the rent so much as is in arrear, and securing to him so much as to become due . . . .

Va. Code Ann. § 8.01-130.9 (emphasis added).

13

PPI argues that the underlined section constitutes "an important caveat: it only applies when the Collateral is 'on premises leased or rented' at the time the 'lien is obtained or created.'" (PPI Mem. at 10 (quoting Va. Code Ann. § 8.01-130.9).) And according to PPI, because the Collateral was not "on premises leased or rented" at the time PPI obtained its PMSI, this section does not apply. (*Id.*) In other words, Critzer's claim to the Collateral fails because the Collateral was not on the leased property at the time PPI's PMSI was created.

Critzer disagrees with PPI's interpretation. It claims this section "identifies the clear restriction on a creditor from removing any goods or property from a leased premises pursuant to enforcement of an alleged lien that was obtained 'after the commencement of the tenancy' which in the instant matter began on January 31, 2023, the date of the Lease." (Critzer Opp'n at 12.) According to Critzer, because the earliest PPI alleges it obtained a lien on any of Zenith's goods or property is August 4, 2023, it is clear that Critzer's tenancy was already in place and that PPI must pay Critzer the rent in arrears in order to take the Collateral. (*Id.* at 12–13.) So, under Critzer's interpretation, it should not matter whether the Collateral was on the leased property when PPI obtained its PMSI to assert its superior lien.

PPI's interpretation is the better of the two. Section 8.01-130.9 refers to liens that are created in goods that are "on premises leased or rented." On its face, it does not encompass those goods that are not on leased or rented land at the time the lien is created. The relevant language in § 8.01-130.9, as PPI points out, has been part of the Code of Virginia since at least the 1860s. *See* Code of Va. tit. 41, ch. 138, § 12 (1860). The Supreme Court interpreted the relevant language of what would later become § 8.01-130.9 in *City of Richmond v. Duesberry,* 68 Va. 210 (1876). The Court explained that this statute protects landlords (like Critzer) against

14

liens (like PPI's) when "the lien has been created after the commencement of the tenancy, *upon goods on the leased premises* which belong to a person liable for rent, and where there is an existing liability for rent in arrear, or to become due at the time the lien is created." *Id.* at 213–14 (emphasis in original omitted and additional emphasis added). Under *Duesberry*, it is clear that one of the conditions to invoking § 8.01-130.9 is that the goods be on the leased premises when the lien commences.

To the extent that portions of the Collateral were on the leased property when the PMSI was established, Critzer may have a claim under § 8.01-130.9. And to the extent the PMSI was granted on Collateral not yet on the leased property, Critzer may not have a claim under § 8.01-130.9. As above, this issue is suitable for resolution at the summary judgment stage, where evidence of when the lien emerged and where the Collateral was located can be presented and evaluated. Until then, it is clear that Critzer has alleged enough to plausibly state a claim to relief under § 8.01-130.9. It alleged that its tenancy commenced in January 2023, (Countercl. ¶ 10), before a lien was obtained by PPI, (*id.* ¶ 20). In particular, it alleges that its landlord lien arose and attached "prior to September 1, 2023," (*id.* ¶ 23), while PPI's interest in the collateral only began "on or about September 1, 2023," (*id.* ¶ 20). Drawing all reasonable inferences in favor of Critzer, the court finds that it alleges that at least *some* of the Collateral was located on the leased property at the time Critzer's lien began. While this is enough to state a claim at this preliminary stage, the claim will be better analyzed at summary judgment, when the timing of the competing liens and location of the Collateral during the relevant time period can be properly established. Accordingly, the court will deny PPI's motion to dismiss as it relates to § 8.01-130.9.

15

## C. Attorney's Fees

Paragraph G of Critzer's combined prayer for relief asks that the court "[a]ward . . . attorney's fees and costs." (*Id.* at 18.) PPI argues that any claim for attorney's fees and costs against it must necessarily fail under Virginia law. That is because, according to PPI, Critzer "does not identify a basis for its claim for attorney['s] fees and costs" in its counterclaim. (PPI Mem. at 11.)

PPI makes a persuasive point. Virginia adheres to the "American Rule," which creates a presumption that "absent a specific contractual or statutory provision to the contrary, attorney's fees are not recoverable by a prevailing litigant from the losing litigant." *Mullins v. Richlands Nat'l Bank*, 403 S.E.2d 334, 335 (Va. 1991). And because Critzer points to no such contractual or statutory provision with respect to PPI, any claim to attorney's fees from it must fail.

Critzer responds that its request for attorney's fees and costs is not aimed at PPI, but rather at Zenith. In requesting this from Zenith, it claims that a contractual provision in the Lease provides the basis for such recovery. So, Critzer claims that PPI's motion to dismiss is "wholly without merit" as it is clear that attorney's fees and costs are requested only of Zenith. (Critzer Opp'n at 15.)

But things are not so obvious. It is not clear from Critzer's prayer for relief exactly from whom attorney's fees are requested. Indeed, Critzer's Paragraph G includes a general request for an award of attorney's fees and costs. To extinguish any ambiguity, the court will grant PPI's motion to dismiss any claim to attorney's fees and costs against it. "The court welcomes the opportunity to potentially narrow the issues that would otherwise need to be

16

resolved at trial." *Remy Holdings Int'l, LLC v. Fisher Auto Parts, Inc.*, No. 5:19-CV-00021, 2022 WL 198851, at *2 (W.D. Va. Jan. 21, 2022). The court takes no position on whether attorney's fees and costs are appropriate against Zenith. Going forward, Critzer's prayer for relief concerning an award of attorney's fees and costs is asserted against Zenith only.

## V.    Conclusion

For the foregoing reasons, PPI's motion to dismiss for failure to state a claim (Dkt. 69) will be **GRANTED in part and DENIED in part**. The motion is **GRANTED** with respect to assertions of a superior lien under §§ 43-30, 8.01-130, 8.01-130.01, 8.01-130.1, 8.01-130.2, 8.01-130.3, 8.01-130.4, 8.01-130.5, 8.01-130.7, and 8.01-130.8 as well as for attorney's fees and costs asserted against PPI. The motion is **DENIED** with respect to assertions of a superior lien under §§ 8.01-130.6 and 8.01-130.9.

The clerk is directed to forward copies of this Memorandum Opinion and Order to the parties.

**ENTERED** this 29th of May, 2025.

*[signature]*

HON. JASMINE H. YOON
UNITED STATES DISTRICT JUDGE